**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **RENITA JAMES,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Case No. SAG-17-1734** |
| | * | |
| **ACRE MORTGAGE & FINANCIAL, INC.,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Renita James ("Plaintiff"), on behalf of herself and the entire class of persons similarly situated, filed a Class Action Complaint against Defendant Acre Mortgage & Financial, Inc. ("Acre") on June 23, 2017.  ECF 1.  Plaintiff, and the proposed class members, seek damages, pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*, for Acre's alleged role in an illegal kickback scheme, under which Acre received kickbacks in exchange for referring mortgage loan borrowers to Genuine Title, LLC ("Genuine Title").  *Id.* Before the Court is Plaintiff's Motion for Class Certification, ECF 39, 39-1 (collectively, "the Motion").  Defendants have opposed, ECF 45, and Plaintiff replied, ECF 47.  The Court held a telephonic hearing on the Motion on May 22, 2020.  For the reasons that follow, Plaintiff's Motion will be granted.

## I.   FACTUAL BACKGROUND

The following is a recitation of the facts that the parties have adduced so far, though the Court notes that the discovery period has not yet concluded.  *See* ECF 29 (Scheduling Order).  At this point, Plaintiff has obtained spreadsheets maintained by Genuine Title tracking the loans referred to it by loan brokers, ECF 39-10, 39-11, affidavits from Jay Zukerberg, a former

Genuine Title principal, ECF 39-8 and -9, deposition transcripts of Zukerberg and another Genuine Title principal taken in other cases involving Genuine Title, ECF 39-3 to -6, and other documents relating to the alleged kickback scheme, as referenced herein.

      **A.     The Alleged Underlying Conduct**

      Acre, a corporation based in New Jersey, is a mortgage lender licensed to do business in the State of Maryland, and elsewhere.  ECF 1, ¶ 6.  Genuine Title was a title service company licensed, and based, in the State of Maryland.  Plaintiff alleges that, from 2009 through 2014, Acre brokers referred approximately 148 loans (including Plaintiff's) to Genuine Title for settlement services, pursuant to an illegal kickback scheme.  *Id.* ¶¶ 41-42; ECF 39-10 (The Acre Loan Closing Spreadsheet).  In general terms, Plaintiff alleges that Genuine Title would provide Acre loan brokers with one of three forms of kickbacks, in exchange for referrals:  (1) cash payments ("Referral Cash"); (2) free marketing materials ("Marketing Materials"); or (3) credits for future marketing services ("Marketing Credits").  ECF 1, ¶¶ 22-40.  As a result of this scheme, Plaintiff and the class members were deprived of kickback-free settlement services and impartial and fair competition, as RESPA requires, 12 U.S.C. § 2607, and paid more for their settlement services than they otherwise would have.  *Id.* ¶¶ 52-53.

      Specifically, Plaintiff contends that one Acre branch, managed by brothers Brian and Jeffrey Krasner ("the Krasners"), engaged in this scheme.  According to Plaintiff, the Krasners received Referral Cash from Genuine Title in exchange for referrals.  *Id.* ¶¶ 18-21.  To corroborate this assertion, Plaintiff provides sworn statements from Jay Zukerberg, the President of Genuine Title during the relevant time period, who indicates that the Krasners created a separate company, Morgan Management, LLC, to receive Genuine Title's kickback payments. ECF 39-8, ¶ 5.  Plaintiff also provides the Certificate of Formation for Morgan Management,

LLC, which lists Brian Krasner as its only member.   ECF 39-12.   Zukerberg has also authenticated several checks that Genuine Title issued to Morgan Management pursuant to this agreement, which was done to hide the payments, and avoid "mak[ing] it look not so fishy."   *Id.* at pp. 5-21; ECF 39-3 at 35:1-36:6 (Zukerberg Dep., Sept. 26, 2016).

In fact, Plaintiff, the proposed class representative, alleges that when she received a loan from the Acre branch run by the Krasners in December, 2012, she was referred to Genuine Title pursuant to this precise arrangement, and she paid Genuine Title for those title and settlement services.   ECF 1, ¶¶ 55-57, 59-60; ECF 39-15 (Plaintiff's  HUD-1 Settlement Statement).   She also alleges that the Krasners received a Referral Cash kickback for referring her loan to Genuine Title.   ECF 1, ¶¶ 59-60.

Plaintiff also contends that other class members' loans were referred to Acre in exchange for Marketing Materials and/or Marketing Credits.   *Id.* ¶¶ 48-49.   Brandon Glickstein, who during the relevant time period served as Genuine Title's Marketing Manager, formed a company, Competitive Advantage Media Group ("CAM"), to further these two methods of kickbacks.   ECF 39-5 at 34:7-18, 35:1-14 (Glickstein Dep., May 12, 2014).   In exchange for referrals, Genuine Title, through CAM, provided either (1) free marketing materials to the referring entity, or (2) "Marketing Credits," which an entity could accumulate and apply against the costs of marketing services that it later purchased from CAM.   *Id.* at 15:21-17:13, 29:4-11, 34:7-18, 35:11-14, 77:19-78:5.   If an entity received marketing credits, Genuine Title and CAM issued those credits "typically once per month."   *Id.* at 37:9-12.   Evidence adduced in discovery shows that in September, 2009, October, 2009, and January, 2010, Ryan Barbalios, an Acre branch manager, received 15,000 pieces of marketing materials from CAM, free of charge.   ECF 45-5 at 5, 8; ECF 45-6 at 7.   Genuine Title's Acre Loan Closing Spreadsheet reflects that Acre

referred approximately 29 borrowers to Genuine Title between March and October, 2009.  ECF 39-10 at 4-5.  Defendants contend, however, that none of these borrowers utilized Barbalios's branch.  ECF 45 at 9-10.

The Acre Loan Closing Spreadsheet also shows that a number of loans in 2012 and 2013 were referred to Genuine Title by Maureen Ryan, who Plaintiff asserts is a loan originator in Acre's corporate office.  ECF 39-10 at 6-15; ECF 47 at 8.  Oftentimes, these entries are accompanied by the notation "ACRE JOE," whom Plaintiff identifies as Joe Semptimphelter, a New Jersey marketing representative for Genuine Title.  ECF 39-10 at 6-15; ECF 47 at 8.  Discovery has not yet uncovered what form of kickbacks, if any, Ryan received in exchange for the referral of these loans.

### B.    Procedural History

Plaintiff filed her one-count Complaint on June 23, 2017, alleging that the kickback scheme between Acre and Genuine Title violated 12 U.S.C. § 2607(a) and (b).  ECF 1, ¶¶ 89-100.  On January 31, 2018, United States District Judge Richard D. Bennett issued a Memorandum Opinion and Order dismissing Plaintiff's Complaint.  ECF 18 and 19; *see* 306 F. Supp. 3d 791 (D. Md. 2018).  Judge Bennett found that Plaintiffs' RESPA claim was barred by that law's one-year statute of limitations, and further concluded that equitable tolling could not salvage the claim. 306 F. Supp. 3d at 798, 801-03.  Plaintiff appealed the decision to the United States Court of Appeals for the Fourth Circuit.  ECF 20.  The Fourth Circuit consolidated Plaintiff's appeal with a number of other related cases from this District, and ultimately reversed Judge Bennett on appeal.  *Edmondson v. Eagle National Bank*, 922 F.3d 535, 558 (4th Cir.

2019).[1]   Primarily, the Fourth Circuit found that Plaintiff had sufficiently alleged that Acre engaged in affirmative acts of concealment, and thus, that the one-year statute of limitations might be tolled based on a theory of fraudulent concealment.  *Id.* at 551–58.  The panel thereafter remanded for further proceedings.  Judge Bennett later transferred the case to this Court on September 18, 2019.

Plaintiff now seeks certification of the following class of individuals who allegedly suffered harm under RESPA, 12 U.S.C. § 2607, as a result of the alleged kickback scheme Acre engaged in with Genuine Title:

> All individuals in the United States who were borrowers on a federally related mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C § 2602) from Acre Mortgage & Financial, Inc., for which Genuine Title provided a settlement service, as identified in Section 1100 on the HUD-1, between January 1, 2009, and December 31, 2014. Exempted from this class is any person who, during the period of January 1, 2009 through December 31, 2014, was an employee, officer, member and/or agent of Defendant Acre Mortgage & Financial, Inc., Genuine Title LLC, Brandon Glickstein, Inc., Competitive Advantage Media Group LLC, and/or Dog Days Marketing, LLC.

ECF 39 at 1.

## II.   LEGAL STANDARDS

The "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).  Federal Rule of Civil Procedure 23 governs the certification of class action lawsuit, and the party seeking certification carries the burden of demonstrating that it has complied with Rule 23.  *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014).  The ultimate decision to certify a class rests in this Court's discretion.  *Boley v. Brown*, 10 F.3d 218, 223 (4th Cir. 1993).

---

[1]  The Fourth Circuit's case caption contains a typographical error in the spelling of Ms. Edmondson's name.

5

Under Rule 23(a), in any class action, the party seeking class certification must first show that (1) the proposed class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the representative's claims are typical of the claims of the class; and (4) the representative will fairly and adequately protect the interests of the class.  In addition to these explicit requirements, the Fourth Circuit has explained that Rule 23 "contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'"  *EQT Prod.*, 764 F.3d at 358.  These four requirements limit the class claims to those fairly encompassed by the named plaintiff's claims. *Dukes*, 564 U.S. at 349.

After satisfying the Rule 23(a) prerequisites, the plaintiff must then show that her proposed class action satisfies one of the enumerated conditions in Rule 23(b).  *E.g.*, *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003).  Here, Plaintiff seeks class certification pursuant to only Rule 23(b)(3).  Under that rule, a class may be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Courts evaluating class certification requests "must rigorously apply the requirements of Rule 23."  *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998).  Although the court's analysis must be "rigorous" and "may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) (citations omitted).  The merits may be considered only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.  *Id.* at 466.

III.     **ANALYSIS**

As noted, Plaintiff must show that her proposed class meets each Rule 23(a) prerequisite, as well as one of the conditions for certification set forth in Rule 23(b).  The Court turns to an analysis of each, except for the Rule 23(a)(1) numerosity requirement, because during the hearing, counsel for Acre conceded that this requirement was met.

     A.     **Readily Identifiable**

In the Fourth Circuit, any proposed class must be "readily identifiable," which other courts refer to as "ascertainability."  *EQT Prod.*, 764 F.3d at 358 (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)).  In other words, a proposed class's definition must allow a court to "readily identify the class members in reference to objective criteria."  *Id.*  Notably, the plaintiff "need not be able to identify every class member at the time of certification."  *Id.*  The class definition must simply "ensure that there will be some 'administratively feasible [way] for the court to determine whether a particular individual is a member' at some point."  *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) (quoting *EQT Prod.*, 764 F.3d at 358).  Only if a class definition renders it "impossible" to identify class members "without extensive and individualized fact-finding or 'mini-trials'" is a class action inappropriate.  *EQT Prod.*, 764 F.3d at 358 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-94 (3d Cir. 2012)).

Acre argues that Plaintiff's proposed class is unascertainable, because outside of the loans referred to Genuine Title by the Krasners, "there is no way to ascertain whether any, let alone which loans, may have been the subject of a kickback by Genuine Title."  ECF 45 at 18.  Acre's argument rests largely on the fact that Plaintiff currently lacks evidence connecting the free marketing materials Barbalios received from CAM to any loans referred to Genuine Title from Barbalios's branch during that time period.  *Id.* at 18-19.

Acre cites only one case in opposition, *Henson v. Fidelity National Financial Inc.*, 300 F.R.D. 413 (C.D. Cal. 2014). There, the plaintiff sought to bring a class action under RESPA, 12 U.S.C. § 2607(a), for defendant Fidelity's receipt of kickbacks in exchange for referring overnight-delivery business to FedEx, UPS, and OnTrac. 300 F.R.D. at 415. The representative plaintiff moved to certify the class of all "'persons nationwide who—in connection with a transaction involving a federally related mortgage loan in which the real estate settlement was handled by a [Fidelity] subsidiary' were charged an overnight-delivery fee during the time when Fidelity had an agreement with FedEx, UPS, or OnTrac." *Id.* The court found ascertainability "thwarted," because the determination of whether each class member's loan was "federally related" needed to be decided on a case-by-case basis, and required "wading through" seven different regulatory exemptions that could potentially deem any class member's mortgage not "federally related." *Id.* at 420-22.

*Henson* is inapposite here. First, unlike in *Henson*, Acre has made no argument that this Court will need to make similar, individualized determinations regarding the proposed class members' mortgages being "federally related."[2] Second, no individualized "mini-trials" will need to occur to determine whether a person listed on the Acre Loan Closing Spreadsheets falls under the class definition. All of the class members' loans were initiated by Acre, and referred to Genuine Title, between 2009 and 2014. These are the only other "objective criteria" which qualify a potential class member for inclusion under the class definition. *See EQT Prod.*, 764 F.3d at 358. Plaintiff has adduced sufficient evidence, at this stage, to show that a common scheme of kickbacks existed between Acre and Genuine Title. Whether the evidence, upon the

---

[2] Of course, if this does become an issue as this case proceeds, Rule 23(c)(1)(C) provides this Court with "broad discretion to alter or amend a prior class certification decision," which includes decertification. *See, e.g.*, *Brown v. Nucor Corp.*, 785 F.3d 895, 901 (4th Cir. 2015).

conclusion of discovery, shows that only those class members whose loans were handled by the Krasners actually suffered an injury, does not impact the administrative ease with which this Court can ascertain each class member's existence, and provide them notice.  *See Krakauer*, 925 F.3d at 658.  Put differently, questions surrounding the *merits* of each class member's claim do not, in this case, impact the Court's ability to ascertain *ex ante* whether each person qualifies as a member under Plaintiff's proposed class definition, or the ability to provide those individuals with adequate notice.  As the Fourth Circuit observed in *Krakauer*, courts generally agree that merits issues are better suited for the question of predominance, which is addressed in full in the next section. *See id.* at 657 (citing cases).

In fact, Plaintiff has already identified nearly every class member that will be a part of this suit, through obtaining the Acre Loan Closing Spreadsheets that Genuine Title maintained. ECF 39-10, 39-11.  At the hearing, Plaintiff represented that she expected the class to largely be comprised of only those individuals contained in those spreadsheets.  The full, unredacted spreadsheets, which have been filed under seal, *see* ECF 41, 41-1, contain each proposed class member's name, address, and phone number, and it is known that each borrower was referred to Genuine Title by some Acre loan officer.  In essence, then, each class member has already been ascertained.  Thus, this Court readily concludes that Plaintiff has shown that her class is readily identifiable.  *See Krakauer*, 925 F.3d at 650, 658 (finding, in a class action suit brought under the Telephone Consumer Protection Act of 1991, that documentation showing every person whose name was on the relevant Do-Not-Call registries for at least 30 days, and had received two calls in a single year, "obviated any [ascertainability] concern[s]").

### B.       Commonality & Predominance

Second, Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  At bare minimum, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Dukes*, 564 U.S. at 350.  But a common injury alone is insufficient.  *See id.*  And while the Rule's text refers to only questions, substantively, "[w]hat matters to class certification . . . [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id.* (citation and internal quotations omitted).  Thus, Rule 23(a)(2) may be satisfied by even a single common question, if the answer "'will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *EQT Prod.*, 764 F.3d at 360 (quoting *Dukes*, 564 U.S. at 350, 359).  While this requires a "rigorous" analysis, and will frequently "entail some overlap with the merits of the plaintiff's underlying claim," *Dukes*, 564 U.S. at 350-51, Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage," *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *accord Brown v. Nucor Corp.*, 785 F.3d 895, 903 (4th Cir. 2015).

Relatedly, Plaintiff moves to certify her proposed class under Rule 23(b)(3).  "The same analytical principles" that apply to Rule 23(a) "govern Rule 23(b)."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).  The difference, however, is that Rule 23(b)(3)'s predominance requirement "even more demanding" than, the Rule 23(a)(2) commonality one, imposing a duty upon courts to "take a close look at whether common questions predominate over individual ones."  *Id.* (internal quotations omitted) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).  If the Court's analysis demonstrates that "proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable."  *In re*

*Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 344 (D. Md. 2012) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008).   Because "the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent'" Rule 23(b)(3) predomination inquiry, *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001) (quoting *Amchem*, 521 U.S. at 609), this Court will analyze predominance and commonality together, *see, e.g.*, *Edmondson v. Eagle Nat'l Bank*, No. SAG-16-3938, 2020 WL 2571079, at *4 (D. Md. May 21, 2020) (citing *Romeo v. Antero Res. Corp.*, No. 1:17CF88, 2020 WL 1430468, at *8 (N.D. W. Va. Mar. 23, 2020)).

### 1.   Common questions of law and fact unite the class's claims on the merits, and predominate any individualized inquiries.

As previously discussed, Plaintiff and the proposed class bring claims under 12 U.S.C. § 2607(a), which provides, "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."   Section 2607(b), on the other hand, deems it unlawful for any person to "accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."   RESPA explicitly provides borrowers with a private right of action against "[a]ny person or persons who violate" the anti-kickback provision, and provides the borrower-plaintiff with the right to recover damages "in an amount equal to three times the amount of any charge paid for such settlement service."   *Id.* § 2607(d)(2).

Thus, to prevail on the § 2607(a) claim, Plaintiff and the proposed class must all prove "(1) a payment of a thing of value, (2) given and received pursuant to an agreement to refer

settlement business, and (3) an actual referral." *Fangman v. Genuine Title, LLC*, No. RDB-14-0081, 2016 WL 6600509, at *12 (D. Md. Nov. 8, 2016) (citing *Guliano v. Fidelity Nat'l Title Ins. Co.*, 684 F.3d 309, 314 (2d Cir. 2012)).  Indeed, as the Supreme Court has observed, § 2607(a) does not require any showing that a kickback is "tied in any respect to a charge paid by a particular consumer," as long as there is an "agreement or understanding" in place.  *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 636 (2012).  Moreover, under the governing regulations, that agreement "may be established by a practice, pattern or course of conduct," not just through direct evidence of a written or verbal agreement.  12 C.F.R. § 1024.14(e) (2011).

Acre argues that the common question and predominance requirements are not met, because "[e]xcluding the borrowers who received a loan through the Krasners," Plaintiff has not established, and cannot establish, "any common practice applicable to all the remaining borrowers."  ECF 45 at 14.  It argues that there is no evidence of a common agreement between Acre branch managers and Genuine Title that impacted all potential class members, but instead only impacted those borrowers whose loans were referred to Genuine Title by the Krasners.  *Id.* at 13-16.  Acre emphasizes that there is "no evidence" that shows that CAM's provision of free marketing materials to Barbalios in 2009 and 2010 was connected to any sort of agreement to refer those loans to Genuine Title.  *Id.* at 16-17.  As explained below, Acre's argument is unavailing.

First, Acre's position is largely a commentary on the merits of a sect of the proposed class's claims, which is procedurally improper at this stage.  The Supreme Court's decision in *Amgen*, which followed *Dukes*, is instructive.  In *Amgen*, the petitioners argued that the respondents, various retirement plans, were not entitled to class certification in a securities fraud action under section 10 of the Securities Exchange Act and Rule 10b-5, because the retirement

plans could not successfully prove, on the merits, that the alleged misrepresentations and misleading omissions were material.  568 U.S. at 463-64.  The Court rejected this argument.  It readily recognized that materiality is an essential element of a securities fraud claim.  *Id.* at 467. But since the question of materiality could be proven through common evidence, it was a "common question" for the purposes of Rule 23.  *Id.* at 467.  In fact, the Court emphasized that Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof," but only that "common questions *predominate* over any questions affecting only individual class members."  *Id.* at 469 (citations and alterations omitted).  Nor did Rule 23 require that the retirement plans prove, at the class certification stage, "that the predominating question will be answered in their favor."  *Id.* at 468.  The Court explained that arguments against class certification which allege a "failure of proof as to an element of the plaintiffs' cause of action" are "properly addressed at trial or in a ruling on a summary-judgment motion," and "should not be resolved" at the class certification stage.  *Id.* at 470 (citation omitted).

The logic of *Amgen* applies with full force here.  In a nutshell, Acre argues that those class members whose loans were not processed by the Krasners would not be able to succeed in proving that their loans were actually referred to Genuine Title pursuant to the alleged kickback scheme.  But, like in *Amgen*, this is merely argument regarding a "failure of proof as to an essential element," and is "properly addressed at trial or in a ruling on a summary-judgment motion," not at the current stage of the proceedings.  *Id.* at 470; *see also Palombaro*, 2017 WL 3437559, at *6 (rejecting arguments by a bank who allegedly engaged in an illegal kickback scheme with Genuine Title, similar to that alleged here, that commonality within the proposed class was lacking because the plaintiffs "have not fully corroborated the alleged kickback

payments with evidence thereof," and because the class included twenty-seven branches "for which there is no evidence of the wrongdoing alleged"; the court deemed the arguments as "unwarranted invitations to pass on the merits of Plaintiffs' case").

Second, and equally problematic, Acre's argument does nothing to undercut the evident common questions uniting the proposed class's claims. Each member's claim "involve[s] the central legal and factual issue of the existence of the alleged illegal kickback scheme between [Acre] and Genuine Title," which at least two courts in this District have held independently satisfy Rule 23(a)(2). *Fangman*, 2016 WL 6600509, at *9; *see Baehr v. Creig Northrop Team, P.C.*, No. WDQ-13-0933, 2014 WL 346635, at *8 (D. Md. Jan. 29, 2014) (finding the commonality requirement satisfied in a RESPA action involving an illegal kickback scheme, because the existence of the illegal referral fee scheme was common to all proposed class members). Additionally, each member of the class will have to prove that an Acre employee referred that class member's loan to Genuine Title, that Genuine Title paid Acre something of value in exchange, and that the statute of limitations for each claim is tolled under the fraudulent concealment doctrine. *See Palombaro v. Emery Fed. Credit Union*, No. 1:15-cv-792, 2017 WL 3437559, at *4-5 (S.D. Ohio Aug. 10, 2017); *Fangman*, 2016 WL 6600509, at *7, *9; *Baehr*, 2014 WL 346635, at *10. Failure to carry their burden as to any one of these questions will be fatal to their claims, thereby satisfying the commonality requirement. Moreover, each class member's damages, if successful, will be calculated in the same manner, per § 2607(d). While the individual awards may differ, based on the amount that Genuine Title charged each borrower, this Court finds that the § 2607(d) damages measure is a common, and predominating, issue. *See Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (affirming the trial court's finding that a common damages measure predominated individual damages calculations).

On the commonality issue, during the hearing, Acre invoked this Court's recent decision of *Rosedale v. CarChex, LLC*, No. SAG-19-2780, 2020 WL 998740 (D. Md. Mar. 2, 2020). *Rosedale* is inapposite, for it dealt with a markedly different set of facts. There, a plaintiff who purchased a specific vehicle service contract ("VSC") to cover repairs to vehicles that are no longer covered under manufacturers' warranties brought a class action claim against the VSC policy issuer. *Id.* at *1-2, *4. The plaintiff claimed that the defendant-policy issuer made false and fraudulent representations that certain engine and powertrain repairs would be covered under the particular level of VSC policy she purchased, but later denied coverage for those costs. *Id.* at *1-2. The plaintiff sought to represent (1) a nationwide class of "[a]ll persons in the United States who purchased a VSC," and (2) a Pennsylvania class comprised of all individuals in that State who purchased a VSC. *Id.* at *4. This Court found commonality lacking, however, because both classes contained individuals who (1) suffered no injury at all, either because they successfully used their VSCs, or because they had not used their VSCs, and/or (2) suffered a different injury, because their policy dispute centered upon coverage of costs different than the engine and powertrain costs the named plaintiff complained of. *Id.* Conversely, in the instant case, each member of Plaintiff's proposed class suffered the same statutory injury as her, in a nearly identical manner - through Acre's referral of a loan to Genuine Title, in exchange for a kickback of value. That some class members were referred to Genuine Title by a different branch member than Plaintiff, or that the branch manager received a different form of kickback, is insignificant.

Acre further argues that the factual differences regarding the non-Krasner borrowers, and the further fact discovery that needs to occur as to whether those loans were referred pursuant to a kickback scheme, demonstrate that individualized inquiries will predominate the common

questions.  Of course, the party seeking class certification "must affirmatively demonstrate [her] compliance with [Rule 23]" through some evidence, *Dukes*, 564 U.S. at 350, but Plaintiff here has done so.  Plaintiff's allegations regarding the operation of the kickback scheme generally, coupled with the extensive corroborating evidence on how the Krasners operated the kickback scheme, show that the scheme's existence is common to all class members.  Minor variations to the scheme's implementation in some aspects – such as the identity of the branch manager making the referrals, or the form of the kickback given in exchange for the referral – are not issues that predominate the common existence of the alleged kickback scheme.  *See Palombaro*, 2017 WL 3437559, at *11-12; *Fangman*, 2016 WL 6600509, at *9, *12.  Moreover, Plaintiff has provided some evidence to show that non-Krasner borrowers were impacted by the scheme. Specifically, Barbalios, an Acre branch manager received three installments of free marketing materials in 2009 and 2010, which coincides with just under 30 loans being referred to Genuine Title from March to October, 2009.  ECF 39-10 at 4-5; ECF 45-5 at 5, 8; ECF 45-6 at 7.  Further, the extensive listing of Maureen Ryan and "Acre Joe" in the Acre Loan Closing Spreadsheet is sufficiently probative, at this stage, to warrant class certification.  This evidence is also bolstered by the fact that Zukerberg and Glickstein already largely confessed to the alleged scheme, and Ryan's and "Acre Joe's" inclusion in the spreadsheet fits the alleged pattern of misconduct. And, notably, if discovery connects them to the scheme that Acre seems to concede that the Krasners were involved in, that new evidence will be relevant to, and will bolster, the Krasner borrowers' claims that their loans were a part of the larger scheme.  *See* 12 C.F.R. § 1024.14(e). The Court therefore does not believe, as Acre contends, that Plaintiff should be deprived of the opportunity for further discovery into Ryan, "Acre Joe," and other individuals not associated with previous litigation surrounding Genuine Title.

> 2.      **The common question of whether the class's claims are tolled under the fraudulent concealment doctrine will not be predominated by individualized inquiries.**

Next, Acre argues that individualized inquiries will predominate the determination of whether each class member's claim is tolled under the doctrine of fraudulent concealment.  ECF 45 at 21-23.  Once again, Acre focuses its argument only on those loans not referred to Genuine Title by the Krasners.  *Id.*  Because there "is not a common scheme or pattern applicable to each and every proposed class member in this case," Acre argues that each non-Krasner referred borrower will need to prove, on a case-by-case basis, "that Acre both fraudulently concealed information necessary to establish that particular borrower's claim and that each individual was diligent  in pursuing a claim."  *Id.* at 23.

Acre's argument does not pass muster, largely because the distinctions it attempts to draw between this case and *Edmondson* are strained.  It is true that the Fourth Circuit, in finding that the six cases before it sufficiently alleged facts showing their entitlement to tolling of the statute of limitations under the fraudulent concealment doctrine, relied in part on the fact that certain lenders formed "sham" entities to receive unlawful cash kickbacks.  *Edmondson*, 922 F.3d at 553.  This, the court found, was one "affirmative act of concealment," sufficient to support the first prong of the fraudulent concealment tolling doctrine.  *Id.*  But nowhere does the court's opinion indicate that the formation of "sham" companies is *necessary* to satisfy this prong.  Indeed, the court later discussed the allegation that lenders did not report kickback payments received from Genuine Title on borrowers' HUD-1 settlements, and agreed with the Third Circuit's conclusion that "omitting required information from the HUD-1 Settlement Statement form can constitute an affirmative act of concealment."  *Id.* at 554 (citing *In re Comm. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 403 (3d Cir. 2015)).  While there may be

some level of individualized inquiry necessary here to determine which affirmative act(s) of concealment satisfies the first prong of the fraudulent concealment analysis for certain borrowers, and whether the class members acted with sufficient due diligence, this Court, like others before it, finds that these individual questions will not predominate the analysis. *See Palombaro*, 2017 WL 3437559, at *8-11 (relying extensively on *Fangman*); *Fangman*, 2016 WL 6600509, at *5-7; *Baehr*, 2014 WL 346635, at *10.

Acre cites two cases in opposition: *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 424 (6th Cir. 2009), and *Minter v. Wells Fargo Bank, N.A.*, No. WMN-07-3442, 2013 WL 1795564 (D. Md. Apr. 26, 2013). As the court in *Palombaro* explained, however, both cases are inapposite. *See* 2017 WL 3437559, at *9-10. *Minter* decertified a RESPA class action, similar to the one here, because after the court's summary judgment ruling, it found that some plaintiffs were on inquiry notice, and others were not, making a trial on the due diligence issue "unmanageable." 2013 WL 1795564, at *3-4. *Minter* is not instructive here for three reasons. First, the decertification of the *Minter* class came after summary judgment, when all facts were available, and not at the class certification stage like the instant case. Second, the evidence here – which points to Acre loan officers not disclosing the kickbacks they received on borrowers' HUD-1 forms, to Acre utilizing "sham" companies to receive cash kickbacks, and to Genuine Title using a separate company to provide marketing materials – is sufficient, at this stage, to conclude that the class members had no inquiry notice of their claims. *See Edmondson*, 922 F.3d at 554-58; *Fangman*, 2016 WL 6600509, at *5 ("[T]he Fourth Circuit has indicated that due diligence only requires investigation where 'an individual has been placed on inquiry notice of wrongdoing.'" (quoting *Brumbaugh v. Princeton Partners*, 985 F.2d 157, 162 (4th Cir. 1993))). Finally, the plaintiffs in *Minter* "relied on the violations of RESPA itself for equitable tolling,

18

requiring inquiries into the transactions of individual class members," which is not the case here. *Baehr*, 2014 WL 346635, at *11 (distinguishing *Minter*, 2013 WL 1795564, at *4).

Acre's reliance on *Egerer* also falls short. There, the Sixth Circuit rejected a due diligence argument that a loan officer would not have disclosed a kickback, even if the customer had asked the officer if any kickbacks were involved, solely because the officer's testimony "[did] not actually support that assertion." 556 F.3d at 424 & n.16. There is no similar testimony in this case, however.

Lastly, to the extent that Acre argues that Plaintiff cannot, on the merits, prove that Acre, itself, fraudulently concealed kickbacks from Genuine Title, *see* ECF 45 at 23, as stated above, these arguments are improper at the class certification stage, *see Amgen*, 568 U.S. at 470.

### 3. Acre's vicarious liability argument, which is another common question of law, is premature.

Finally, the parties debate the issue of whether Acre can be held vicariously liable for the actions of the Krasners and other Acre loan managers. ECF 45 at 19-20; ECF 47 at 14-15. This, however, is yet another issue that Acre seeks to have this Court adjudicate on the merits, at the class certification stage. Of course, each class member's claim is predicated on satisfactorily demonstrating vicarious liability, and it is therefore a common question that unites their case presentation. But, as previously stated, a final determination of this question is best left for, at the earliest, the summary judgment stage. *See Amgen*, 568 U.S. at 470.

In conclusion, the Court finds that a number of common questions of fact and law unite Plaintiff's class. If the class fails to meet its burden on any one of these questions, its claims will fail. While there will be some individualized questions that arise during trial, the common questions noted above will predominate those individual ones. Accordingly, this Court concludes that the requirements of Rule 23(a)(2) and 23(b)(3) are met.

### C.      Typicality

The next Rule 23(a) prerequisite, typicality, requires that "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "typicality" requirement in Rule 23 "goes to the heart of a representative parties' ability to represent a class." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). For that reason, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Id.* This analysis "tend[s] to merge" with the commonality question. *See Broussard*, 155 F.3d at 337 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

Acre advanced no written argument on the typicality requirement, *see* ECF 45, but asserted at the hearing that typicality was wanting because Plaintiff is a Krasner borrower, and her claim therefore is not typical of those asserted by non-Krasner borrowers. This argument lacks merit. As discussed above, Plaintiff suffered the same injury, under the same alleged scheme, as all other class members. Her claim is therefore typical, "insofar as [she] will seek relief under the same legal theory [as the class members] and will 'tend to advance the interests of the absent class members.'" *Fangman*, 2016 WL 6600509, at *10 (quoting *Deiter*, 436 F.3d at 466). The minor differences in which branch manager referred the loan to Genuine Title, and which form of kickback that manager received, are immaterial. *Compare with Broussard*, 155 F.3d at 334, 340 (finding typicality lacking because the plaintiffs, a number of Meineke franchises, signed franchise agreements that varied "from year to year and from franchisee to franchisee," and contained "materially different contract language").

### D.     Adequacy

The last Rule 23(a) prerequisite, adequacy, requires that Plaintiff, and her retained counsel, "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This analysis "focuses on class counsel's competence and experience and on the degree of antagonism between the class and the representative."  *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 558 (D. Md. 2006) (quoting *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 499 (D. Md. 1998)).  It also "serves to uncover conflicts of interest between the named parties and the class they seek to represent."  *Amchem*, 521 U.S. at 625.  Such a conflict of interest "must be fundamental" and "go to the heart of the litigation."  *Gunnells*, 348 F.3d at 430-31 (citation omitted).

Acre again offered no written argument on this issue, *see* ECF 45, but asserted at the hearing only that Plaintiff was an inadequate representative of the class, because she is a Krasner borrower, and will not adequately represent the non-Krasner borrowers in the class.  This argument is meritless.  Plaintiff "share[s] common objectives," the same common "factual and legal positions," and the "same interest in establishing the liability of [Acre]."  *Gunnells*, 348 F.3d at 431; *see Fangman*, 2016 WL 6600509, at *11.  Without any argument that Plaintiff lacks any "general knowledge of what the action involves and a desire to prosecute the action vigorously," this Court readily concludes that Plaintiff is an adequate class representative.  *See Benway v. Residential Real Estate Servs., LLC*, 239 F.R.D. 419, 425-26 (D. Md. 2006).  Moreover, even had it been challenged, the Court also concludes that Plaintiff's counsel, which is largely identical to counsel for the class certified in *Fangman*, will adequately represent the class.  *See* 2016 WL 6600509, at *11.  Thus, all four Rule 23(a) certification prerequisites are met.

### E.    Superiority

Returning to the second Rule 23(b)(3) requirement, Plaintiff must demonstrate that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  The Rule explicitly lists four pertinent considerations:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D)    the likely difficulties in managing a class action.

*Id.*

Acre offers no written argument on this consideration, either, but argued at the hearing that it was not satisfied, because the factual differences between the Krasner-referred loans and the other loans at issue make it inferior to try all of the claims together.  This Court disagrees. As discussed above, all class members' claims arose out of the same alleged kickback scheme. "In fact, the Plaintiff[] and class members rely on one another's individual loan transactions to establish a 'practice, pattern or course of conduct' between [Acre] and Genuine Title." *Fangman*, 2016 WL 6600509, at *12 (quoting 12 C.F.R. § 1024.14(e)).  Moreover, the same damages calculation method will apply to each claim.  *Id.*  This case is therefore best adjudicated collectively.  There are no concerns, to this Court's knowledge, about any cases by Acre borrowers already pending, *see* Fed. R. Civ. P. 23(b)(3)(B), or that this forum is an improper one, *see id.* R. 23(b)(3)(C).  Moreover, given that common legal and factual issues abound, the Court is convinced that there will be little difficulty in managing this class action moving

forward. *See id.* R. 23(b)(3)(D).  To the extent that, as this case proceeds, managerial difficulties do arise (e.g., it becomes apparent that the fraudulent concealment issue cannot be proven through common evidence, or there is no common scheme present), this Court can utilize the provisions available to it to amend the class definition, *id.* R. 23(c)(1)(C), decertify the class, *id.*, or divide the class into subclasses in order to streamline the presentation of the merits at trial, *id.* R. 23(c)(5).  At this stage, however, the Court is convinced that all Rule 23(a) and 23(b)(3) conditions for class certification are met.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Class Certification, ECF 39, is GRANTED.  A separate Order follows.

Dated:  June 2, 2020                                      _____/s/_____
                                                                          Stephanie A. Gallagher
                                                                          United States District Judge